## PEMBROKE v. SULZER.

(Court of Appeals of District of Columbia. Submitted March 8, 1920. Decided May 3, 1920.)

### No. 1291.

1. Patents ⊚⇒90(7)—Designer of paper made in response to request of manufacturer's agent held inventor.
    Where a manufacturer's agent asked the president of a paper company for a carbon paper having certain characteristics, without disclosing the means of accomplishing the desired results, the latter was the inventor of a paper which possessed the required characteristics and others not mentioned by the agent.

2. Patents ⊚⇒91(1)—Applicant filing after patent is issued to another has burden of proving priority.
    An applicant, who waited until after an interfering patent had been issued to another before he filed his application, has the burden of proving priority of invention beyond a reasonable doubt.

3. Patents ⊚⇒91(4)—Priority of invention of special stencil paper and process awarded to patentee.
    In interference proceedings between the patentee of the Pembroke patent for stencil paper and the process for making it and a subsequent applicant for a similar patent, priority of invention awarded patentee.

Appeal from a Decision of the Assistant Commissioner of Patents.

Interference proceeding in the Patent Office between Charles J. Pembroke and Albert F. Sulzer. From a decision of an Assistant Commissioner of Patents, awarding priority to Sulzer, Pembroke appeals. Reversed.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Taylor E. Brown, of Chicago, Ill., and Reeves Lewis, of Washington, D. C. (Frank Keiper, of Rochester, N. Y., in the Patent Office), for appellant.

F. F. Church, of Rochester, N. Y., for appellee.

ROBB, Associate Justice. Appeal from a decision of an Assistant Commissioner of Patents in an interference proceeding, reversing the decision of the Examiners in Chief and awarding priority to Sulzer, whose application was not filed until more than two years after he claims to have made the invention and two months after a patent had been issued to Pembroke, the appellant. The invention relates to stencil paper and the process of making it. It is defined in six counts, of which the first and fourth will serve as examples:

"1. The process of making flexible opaque stencil paper having an opaque coating which can be removed at a single stroke of the stylus, which consists in first making a translucent paper nonabsorbent, then coating said paper with an opaque coating that will adhere to said paper without penetrating the fibre of the paper, said coating being as flexible as the paper, but brittle enough to be practically all removed from the paper by a single stroke of the stylus."

"4. An article of manufacture consisting of a translucent paper web made water proof by a translucent coating and then coated on one side thereof with a combination of waxy material and opaque pigment."

Sulzer was general superintendent of film manufacture for the Eastman Kodak Company, to which company the application in interference was assigned by him. That company obtained a license and option to purchase the Gaisman process for marking photographic film negatives. The film cartridge used by Gaisman includes, in addition to the film and red paper back, a strip of carbon paper interposed between them, with the carbon side toward the backing paper. In practicing the process the operator opens a small door or slide in the back of the camera, thus exposing the backing paper, upon which he writes the desired notation with a stylus. The pressure of the stylus transfers the carbon to the backing paper and permits the light to penetrate the stencil paper and photographically imprint the notation upon the film.

[1] Sulzer was directed to produce film rolls for carrying out this process, but he found that ordinary carbon paper was unsatisfactory for use in connection therewith. On the evening of February 13, 1914, therefore, Mr. Pembroke, highly skilled in the art and president of the Kee-Lox Company (large manufacturers of carbon paper), was informed by Mr. Haste, manager of the Kodak Park Works of the Eastman Kodak Company, that the company required a special carbon paper which should have certain properties. To quote from the testimony of Mr. Haste:

"It should be opaque and free from defects, like pinholes, and that it should have the property of the carbon being easily removed when written upon with a pencil or stylus, as distinguished from the ordinary carbon paper, of which it was required that as many impressions as possible could be taken."

This was the extent of the information given Pembroke by Haste. He did not tell Pembroke of the Gaisman invention, or of the pur-

pose for which the desired carbon paper was to be used, nor did he inform him that it should be waterproof. In other words, Pembroke was told in very general terms that a carbon paper was desired possessing some, but not all, of the properties mentioned in the claims of the interference. We fully agree with the Examiners in Chief that nothing more was disclosed to Pembroke by Sulzer's agent, Haste, than a result to be accomplished, and that Pembroke is the real inventor of the subject-matter of these claims. Sendelbach v. Gillette, 22 App. D. C. 168; Anderson v. Wells, 27 App. D. C. 115; Robinson v. McCormick, 29 App. D. C. 98, 10 Ann. Cas. 548; McKeen v. Jerdone, 34 App. D. C. 163; Hart & Barber v. Wiig, 49 App. D. C. ——, 258 Fed. 978.

[2, 3] After the completion of his invention, but before manufacturing paper embodying it for the Eastman Kodak Company, Pembroke required and obtained from that company an agreement not to analyze his coating or "dope." Thereafter large quantities of paper were manufactured and sold by him to that company. Having waited until after the issuance of the Pembroke patent to file his application, the burden is upon Sulzer to establish his case beyond a reasonable doubt. Not only has he failed to do this, but, in our view, he has failed to establish by even a preponderance of evidence that he, and not Pembroke, is the inventor of the claims of the issue. We therefore adopt the carefully prepared and satisfactory opinion of the Examiners in Chief, reverse the decision of the Assistant Commissioner, and award priority to Pembroke.

Reversed.